IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY ABRAMS,

          Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

OPINION AND ORDER

20-cv-859-slc

---

      Plaintiff Jeffrey Abrams seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration,[1] denying his claim for disability insurance benefits (SSDI) under the Social Security Act. 42 U.S.C. § 405(g). Abrams contends that the administrative law judge (ALJ) who denied his claim erred by: (1) not properly considering the opinion of treating psychiatrist, Dr. Abraham Verjovsky, that Abrams is unable to handle stress of any kind; (2) mischaracterizing and overemphasizing Abrams's activities in discounting his subjective complaints; and (3) failing to resolve an alleged conflict between Abrams's residual functional capacity and the Dictionary of Occupational Titles (DOT). Although the Commissioner filed a response in opposition to all three issues, Abrams did not reply.

      For the reasons below, I am not persuaded that any of the issues raised by Abrams warrant remand. Therefore, I am affirming the Commissioner's decision.

---

[1] Because Kilolo Kijakazi has replaced Andrew Saul as the head of SSA, I have amended the case caption accordingly.

## FACTS

The following facts are drawn from the Administrative Record (AR), filed with the Commissioner's answer in this case:

On May 11, 2018, Abrams filed an application for a period of disability beginning on January 30, 2016, when he was 59 years old. AR 21. After Abrams's application was denied initially and on reconsideration, ALJ Debra Bice held a video administrative hearing on December 20, 2019, at which Abrams and a vocational expert (VE) testified. *Id.* Abrams was represented by his attorney, Curtis Lein. *Id.* The ALJ issued a written decision on January 23, 2020, finding that Abrams was not disabled.

The ALJ determined that even though Abrams suffered from the severe impairments of degenerative disc disease of the lumbar spine and left shoulder tendinopathy, he retained the residual functional capacity (RFC) to perform light work limited to no reaching overhead with his left arm. AR 24, 28. Relying on the testimony of the VE, the ALJ found that despite his limitations, Abrams could still perform his past work as a vice president of operations, as he actually performed that work. AR 32-33. After the Appeals Council denied Abrams's appeal, Abrams filed his appeal in this court.

## OPINION

In reviewing an ALJ's decision, I must determine whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This deferential standard of review means that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or

substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)). We also do not "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Abrams contends that the ALJ erred by (1) not properly considering Dr. Verjovsky's opinion regarding his alleged mental functioning limitations; (2) mischaracterizing or overemphasizing Abrams's activities in discounting his subjective complaints; and (3) failing to resolve an alleged conflict with the DOT at step five of the evaluation process. I will address each argument separately:

**I. Dr. Verjovsky's Opinions**

In a letter dated January 15, 2019, Abrams's treating psychiatrist, Dr. Verjovsky, stated that he had treated Abrams for chronic depression, debilitating anxiety, attention deficit disorder, and opioid use disorder between August 2011 and December 2018. He also opined that Abrams has an "inability to mentally handle gainful employment on a regular basis due to his inability to handle any kind of stress," despite the fact that Abrams "has remained quite

3

stable for over 8 years since he underwent a series of 36 Transcranial Magnetic Stimulation treatments." AR 1935.

On September 10, 2019, Dr. Verjovsky completed a form regarding Abrams's mental functioning in which he checked boxes indicating that Abrams (1) was markedly impaired in his abilities to maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, and get along with co-workers without distracting them or exhibiting behavioral extremes; (2) was extremely impaired in his ability to complete a normal workday without normal interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) would miss four or more days of work a month.[2] AR 491-94.

Under the rules applicable to Abrams's claim, the ALJ is required to consider the persuasiveness of each medical opinion—regardless of its source—focusing on supportability and consistency. *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019); 20 C.F.R. § 404.1520c(a). The ALJ has met these minimal standards in this case.

The ALJ found Dr. Verjovsky's opinions unpersuasive because they were not supported by his own treatment notes showing (1) completely normal mental status examination findings and (2) Abrams's ability to cope despite increased stress related to starting a business and having a house built. AR 32 (citing AR 677, 759). Specifically, the ALJ pointed out that even though

---

[2] Although Dr. Verjovsky also found that Abrams had moderate limitations in several mental functioning areas, Abrams has not discussed these findings in his brief or argued that the ALJ erred in failing to adopt limitations related to those areas. Therefore, Abrams has waived any argument related to Dr. Verjovsky's other findings. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018) (failure to develop argument in brief results in waiver); *M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

the medical record reflected Abrams's longstanding issues with depression and anxiety, he had improved with treatment and was stable enough to participate in the stressful activities of starting a small business for which he performed work and traveled to China, purchasing land, helping coordinate the building a house on that land, and relocating into the house.[3] AR 25-27 (citing e.g., AR 545, 547, 549, 681, 683).  The ALJ also noted that during the relevant period, the record contained consistently normal mental status examination findings for Abrams, including full orientation and intact memory, insight, judgment, attention, and concentration. AR 25-27, 29-30, 32 (citing e.g., AR 545, 547, 549, 677, 679, 681, 683, 1687, 1789).  The ALJ further discussed that Abrams was repeatedly observed to be cooperative, to have no problems interacting with others, to have good eye contact, and normal speech.  AR 26-27.  For example, on October 18, 2018, Abrams reported doing well on Klonopin and with his business, which was requiring him to spend more time on his computer in the morning.  AR 677.  Dr. Verjovsky's objective findings from the same day stated that Abrams had "[n]o deficits in recent or remote memory, attention span or concentration, language or fund of knowledge" and that his mood was good with a brighter affect.  *Id.*  Accordingly, the ALJ determined that the record showed no significant change in Abrams's mental functioning following his retirement in January 2016. AR 30.

Instead, the ALJ found persuasive the assessments provided by state agency reviewing psychologists Dr. Susan Donahoo (initial level of review on June 27, 2018) and Dr. Ellen Rozenfeld (reconsideration level of review on November 15, 2018), who found that even with

---

[3] Abrams challenges the significance of these activities in conjunction with his argument that the ALJ improperly evaluated subjective symptoms.  However, as discussed in the next section of this opinion, I find his argument unpersuasive.

his current stressors, Abrams would have only mild limitations in interacting with others, adapting and managing himself, or concentration, persistence, or pace. AR 31 (citing AR 78, 90-91). Drs. Donahoo and Rozenfeld also cited Abrams's normal mental status examination findings in support of their findings.

Abrams has not challenged the ALJ's specific findings—which are well supported by the record—or the Commissioner's argument that the ALJ reasonably determined from this evidence that Abrams had no mental functioning limitations. Instead, in his opening brief, Abrams argues that Dr. Verjovsky has the best longitudinal perspective to evaluate his condition and that the state agency consultants completed their review before Dr. Verjovsky submitted his opinions in 2019, so the consultant assessments were not based on a complete record. However, the state agency psychologists had access to Dr. Verjovsky's treatment notes up through the date of their reviews in 2018, which covered almost the entirety of Dr. Verjovsky's treatment relationship with Abrams, which ended in December 2018. As the ALJ noted, many of these notes showed that Abrams was doing well on his medications and managing his work.

It is true that "ALJs may not rely on outdated opinions of agency consultants if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion," *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (internal quotation marks omitted), but it is Abrams's burden to explain how the "new evidence" could have altered the consultants' opinions and the ALJ's decision, *Keys v. Berryhill*, 679 Fed. App'x 477, 481 (7th Cir. 2017) (placing burden on claimant). As Abrams points out, Dr. Verjovsky did not write his letter or complete a mental functional capacity form concerning Abrams's limitations until 2019, which was after the state agency psychologists reviewed the record.

However, Dr. Verjovsky based his 2019 opinions on his past treatment of Abrams between 2011 and 2018, for which the consultants had a full medical record. Dr. Verjovsky did not make any new diagnoses or significant medical findings after December 2018. Therefore, without more, Abrams has not shown that the ALJ erred in relying on the state agency psychologists' opinions.

In any event, "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Kasberger v. Astrue*, 2007 WL 1849450, at *4 (7th Cir. June 27, 2007). For the reasons discussed above, the ALJ could have reasonably found the state agency psychologists' opinions more persuasive than those of Dr. Verjovsky. As the Seventh Circuit has made clear, "the resolution of competing arguments based on the record is for the ALJ, not the court." *Matthews v. Saul*, 833 Fed. App'x 432, 436-37 (7th Cir. 2020) (quoting *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002)); *see also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) ("Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'") (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). Abrams has not shown that the record evidence required the ALJ to draw a different conclusion. *See Matthews*, 833 Fed. App'x at 36.

**II. Subjective Symptoms**

An ALJ's findings about a plaintiff's testimony and allegations regarding his symptoms are entitled to great deference, and they should be upheld unless patently wrong. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). An ALJ is only required to give reasons sufficient to provide a fair sense of how the ALJ assessed plaintiff's testimony and statements. Social

Security Ruling (SSR) 16-3p.  Moreover, the ALJ does not need to explain why each of the claimant's statements deserved little weight.  *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012).  The court reads the decision as a whole to determine whether the ALJ adequately supported the subjective-symptom evaluation.  *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2014).  Not all of the ALJ's reasons have to be sound as long as enough of them are.  *Halsell v. Astrue*, 357 Fed. Appx. 717, 722-723 (7th Cir. 2009).

The ALJ specifically mentioned Abrams's allegations regarding his physical and mental limitations but concluded that Abrams's self-reports about the extent of his disabling symptoms were inconsistent with his activities, his mostly-normal mental status examinations, and his treatment notes. AR 29-30.  The ALJ discussed each of Abrams's mental and physical conditions in detail and explained why she did not believe that Abrams was as limited as he claimed to be. She pointed out that Abrams's longstanding complaints of back pain, depression, and anxiety did not preclude his past work and have not precluded him from continuing to run a business (albeit at a loss), purchasing land, having a home built, or relocating.  AR 29.  She noted that Abrams is able to sweep the floor, clean the litter box, do laundry, cook, and shop for groceries. *Id.*  The ALJ also found it significant that there was no evidence of any significant change in Abrams's condition that led to his retirement in January 2016, after he admittedly had conflicts with his boss and talked about wanting to pursue "other things."  AR 30, 608.

Abrams contends that the ALJ's evaluation of his subjective symptoms was deficient because the ALJ failed to consider his testimony concerning the limitations he has in performing his daily activities and running his business.  At the hearing, Abrams testified that he has to take numerous breaks to complete household chores, AR 62-64, he quit his job in January 2016

because his boss was abusive and he was overwhelmed, AR 45-46, he relied on others to handle customers and IT for his new start-up company that makes record cases, AR 49-51, and he did not lift a tool or have significant input in the house building process, AR 64. However, nothing in the record or the ALJ's decision suggests that the ALJ ignored this testimony. In fact, the ALJ references Abrams's testimony throughout her decision and provides well-founded reasons for discounting parts of it. AR 24, 26, 29-30. For example, the ALJ acknowledged Abrams's testimony that he had hired people to handle his business's IT and customers and works less than 45 hours a month, but noted that Abrams's services were significant because he owns the company, set up the business, traveled to China on two occasions, and oversees general operations. AR 24. Abrams vaguely argues that the ALJ drew the wrong conclusions regarding his work ability, but it is not the court's role to second guess the ALJ's decision. For all of the reasons discussed above, there is sufficient evidence from which the ALJ could reasonably conclude that Abrams was able to do more than he claimed. Therefore, I find that the ALJ's subjective symptom analysis was not patently wrong.

### III. Step Five Determination

Abrams argues that the ALJ erred by failing to resolve a conflict between Abrams's RFC and the DOT. At the hearing, the VE testified that the only job that existed for someone with Abrams's past experience and an SVP level of 5 or 6 was dispatcher (DOT Code 932.167-010). AR 68-69. The VE also acknowledged that the requirements for dispatcher listed in the DOT companion text, Occupational Select Characteristics (#07.04.05 App 7, pp. 1-2), include frequent reaching. AR 70. Abrams argues that because the ALJ found that he was unable to

9

reach overhead with his left arm, he could not perform work as a dispatcher. This argument is a nonstarter.

At step four of the sequential evaluation process, the ALJ relied on the VE's testimony regarding Abrams's past work, *see* AR 66, in finding that Abrams could perform his past relevant work as a vice president of operations. 20 C.F.R. § 404.1520(a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled."). As the Commissioner points out, because the ALJ found at step four that Abrams was not disabled, she did not need to proceed to step five. *See Gebauer v. Saul*, 801 F. App'x 404, 411 (7th Cir. 2020) ("[A]n ALJ reaches [step five] only if the ALJ first concludes in step four that a claimant could not perform any of her past jobs.") (citing 20 C.F.R. 404.1520(g)(1)). Therefore, any error that the ALJ may have committed in not resolving or clarifying conflicts in the VE's testimony regarding the dispatcher position is harmless and does not warrant remand. *Id.* (VE testimony related to step five analysis "not decisive for [ALJ's] ultimate decision" to deny benefits). Abrams has not challenged the ALJ's step four finding or the Commissioner's arguments that the ALJ did not commit reversible error because she was not required to proceed to step five.

For all of the above reasons, I find that the ALJ's decision is thorough and generally well reasoned and none of the issues raised by Abrams warrants remand. Accordingly, I will affirm the Commissioner's decision denying benefits.

**ORDER**

IT IS ORDERED that the that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Jeffrey Abrams's application for disability benefits, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 21st day of October, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge